235 P.3d 835 (2010)
Teresa KNUDSEN, an individual, Appellant,
v.
WASHINGTON STATE EXECUTIVE ETHICS BOARD, an agency of the State of Washington, Respondent.
No. 26680-0-III.
Court of Appeals of Washington, Division 3.
July 13, 2010.
*837 Teresa Knudsen (Appearing Pro Se), Spokane, WA, for Appellant.
Linda Marie Moran, Attorney at Law, University Place, WA, M.B. Newberry, Office of the Atty. General, Government Compliance and Enforcement, Olympia, WA, for Respondent.
KULIK, C.J.
¶ 1 Teresa Knudsen, a college teacher, sent an e-mail from a Spokane Community College (SCC) computer encouraging recipients to urge state legislators to approve two bills that would provide tenure-like protections for part-time college teachers. After a hearing, the Washington State Executive Ethics Board (Board) concluded that Ms. Knudsen violated RCW 42.52.160(1), WAC 292-110-010, and RCW 42.17.190 by her use of state resources for lobbying. On appeal to this court, Ms. Knudsen contends her activities did not violate the prohibitions against using state resources for private benefit, or against lobbying, and the Board's action was unconstitutional. From our de novo review of the Board's order, we conclude that the Board properly determined that Ms. Knudsen violated the statutes prohibiting the use of state resources for private gain and lobbying. And we decline to consider Ms. Knudsen's assertion of constitutional claims because she fails to provide any citation of authority to support them. We affirm the Board's order.

FACTS
¶ 2 The Board entered findings of fact and conclusions of law. We review the Board's record and its findings of fact and conclusions of law. Valentine v. Dep't of Licensing, 77 Wash.App. 838, 843-44, 894 P.2d 1352 (1995). Here, Ms. Knudsen challenges the decision of the superior court, but has not challenged the findings of the Board. Specifically, she has failed to challenge the Board's findings in her assignments of error. Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992). The following facts are based primarily on the Board's findings of fact.
¶ 3 On February 25, 2005, Ms. Knudsen, a college teacher, sent an e-mail from a SCC computer encouraging recipients to urge state legislators to approve two bills that would provide tenure-like protections for part-time college teachers. At the time, Ms. Knudsen was a state employee, employed as an adjunct academic adviser at SCC, teaching courses in the English Department. Ms. Knudsen taught English courses until 2005 when her employment ended.
¶ 4 Ms. Knudsen admitted that she sent an e-mail from her SCC computer on February 25, 2005, to "`SCC Faculty,'" "`SFCC Faculty,'" and "`IELCorrections Ed.'" Administrative Record (AR) at 194. This e-mail concerned legislation pending before the Washington legislature regarding part-time public employees. Ms. Knudsen admitted that several SCC faculty responded to the e-mail, either in person or by e-mail.
¶ 5 In its findings, the Board quotes this e-mail, in part:
Among other statements, the e-mail stated:
 "You can view the bill at the following website ..."

*838  "Remember to contact your legislators on personal e-mail ..." (Legislators email addresses were then listed.)
 "In the e-mail, tell any of your personal problems with lack of job security. You can mention as well that this bill has no cost associated with it. Be sure to mention the bill numbers."
 "Be sure to list your title and either where you live or where you teach. You might also include your phone..."
 "Here is a sample letter. If you like, please modify it to fit your personal experience ..."
AR at 195.
¶ 6 SCC had an "EMPLOYEE ACCEPTABLE USE GUIDELINES FOR CCS TECHNOLOGY RESOURCES," effective November 24, 1998. AR at 22. The policy allows for occasional and limited personal use of SCC resources when there is no cost to the district, the use does not interfere with the employee's official duties, and the use otherwise complies with all applicable laws and regulations. The policy specifically states that the technology resources shall not be used for commercial, illegal, or political purposes.
¶ 7 Ms. Knudsen did not obtain prior approval before sending the February 25, 2005 e-mail. SCC sent Ms. Knudsen an e-mail reminding her that the de minimis use exception did not apply to political or lobbying activities unrelated to the employee's official duties. The administration informed Ms. Knudsen that the e-mail she sent constituted lobbying that was unrelated to her official duties. The administration asked Ms. Knudsen whether she agreed. She did not. However, Ms. Knudsen presented no evidence that lobbying the legislature was within the scope of her official duties as an English teacher at SCC.
¶ 8 The Board found reasonable cause to believe Ms. Knudsen had violated the ethics in public service act, chapter 42.52 RCW, and scheduled a hearing. During this hearing, Ms. Knudsen admitted that on February 25, 2005, she used a state computer, or state-provided computer, or state-provided Internet access at SCC to send an e-mail message regarding community college faculty salaries and retirement plan funding. She sent the e-mail to "SCC Faculty; SFCC Faculty; IELCorrections Ed" so that it would go to all faculty members who had e-mail at the community colleges in Spokane. AR at 18. Ms. Knudsen asked recipients to use their personal, non-state mail to contact legislators about two bills that would provide tenure-like protections for part-time teachers. She included a sample letter that recipients could tailor to their needs.
¶ 9 At the hearing before the Board on January 12, 2007, Ms. Knudsen argued that the e-mail constituted de minimis use under WAC 292-110-010, and that she did not commit a knowing violation of RCW 42.52.160(1). She also asserted that she sent the e-mail on behalf of her union. But Ms. Knudsen also stated, "[the union] had not told the faculty at all about the legislation mentioned in my e-mail and [was] not lobbying the state legislature regarding the legislation mentioned in my e-mail." AR at 67.
¶ 10 The Board concluded that a preponderance of evidence proved that Ms. Knudsen violated RCW 42.52.160(1) and WAC 292-110-010 in the preparation and distribution of the February 25, 2005 e-mail from her SCC computer. The Board also concluded that the e-mail constituted unauthorized lobbying under RCW 42.17.190 and was intended for the private benefit or gain of Ms. Knudsen or others. The Board determined that chapter 42.52 RCW and WAC 292-110-010 did not support Ms. Knudsen's position, and that her other arguments did not sanction her activity.
¶ 11 Ms. Knudsen appealed to the superior court, which affirmed the Board's decision. This appeal follows.

ANALYSIS
¶ 12 Judicial review of the Board's final order is governed by chapter 34.05 RCW, the Administrative Procedure Act. RCW 42.52.440. This court stands in the same position as the superior court, reviewing the Board's order independently of the superior court review. RCW 34.05.510. In *839 reviewing an administrative action, we apply the standards of the Administrative Procedure Act directly to the record before the Board. See Valentine, 77 Wash.App. at 843, 894 P.2d 1352. "Because [the Court of Appeals] review[s] the same record on the same basis as the Superior Court, findings of fact and conclusions of law entered by the Superior Court are superfluous." Id. at 844, 894 P.2d 1352.
¶ 13 Under RCW 34.05.570(3), Ms. Knudsen argues that the Board erroneously interpreted or applied the law, that the law is unconstitutional as applied to her activities, and that SCC acted in an arbitrary or capricious manner. When reviewing for an error of law, the court engages in de novo review of the Board's legal conclusions. Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325, 646 P.2d 113 (1982). The court must give substantial weight to the Board's interpretation of the Administrative Procedure Act. Ames v. Dep't of Health Med. Quality Assurance Comm'n, 166 Wash.2d 255, 261, 208 P.3d 549 (2009).
¶ 14 When considering a constitutional question, the court engages in a de novo review. Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 311, 884 P.2d 920 (1994). A "statute is presumed constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt." Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000). The same standards apply when the constitutionality of a rule is challenged. Longview Fibre Co. v. Dep't of Ecology, 89 Wash.App. 627, 632-33, 949 P.2d 851 (1998).
¶ 15 E-Mail. The ethics in public service act, chapter 42.52 RCW, was designed to prevent the use of publicly-supplied resources by those in public office or employment for private benefit or gain. See RCW 42.52.900. To achieve this goal, the legislature prohibited the personal use of state resources for private benefit or gain. RCW 42.52.160(1) reads:
No state officer or state employee may employ or use any person, money, or property under the officer's or employee's official control or direction, or in his or her official custody, for the private benefit or gain of the officer, employee, or another.
¶ 16 The legislature authorized the Board to adopt rules providing exceptions for de minimis private use if the activity engaged in was appropriate for the workplace. RCW 42.52.160(3). Accordingly, the Board adopted WAC 292-110-010 which allows de minimis private use of state resources for some activities, while prohibiting private use of state resources for other activities. Significantly, former WAC 292-110-010 (2002) prohibits private use of state resources for lobbying:
(6) Prohibited uses.
....
(d) Any use for the purpose of participating in or assisting in an effort to lobby the state legislature, or a state agency head. Such a use of state resources is specifically prohibited by RCW 42.17.190, subject to the exceptions in RCW 42.17.190(3).
¶ 17 RCW 42.17.190(3) prohibits agencies from using public funds to lobby unless the matter pertains to official agency business.
¶ 18 The Board's rules do not define "lobbying," but a definition of "lobbying" is contained in former RCW 42.17.020(27) (2002):
"Lobby" and "lobbying" each mean attempting to influence the passage or defeat of any legislation by the legislature of the state of Washington .... Neither "lobby" nor "lobbying" includes an association's or other organization's act of communicating with the members of that association or organization.
¶ 19 It is undisputed that Ms. Knudsen used state e-mail resources to send an e-mail to every SCC faculty member with a state e-mail address to encourage them to contact and urge legislators to approve two bills. These bills would provide "tenure-like protections" and the right of part-time faculty "to accrue workload up to full-time." AR at 18. Ms. Knudsen stated that her purpose in sending the e-mail was to effect the passage of these bills. She believed that they would improve her position and the position of every other part-time faculty member.
*840 ¶ 20 Ms. Knudsen also admits to her private use of public resources. However, she argues that her e-mail did not result in private benefit or gain for herself or others. But RCW 42.52.160(1) does not require that the e-mail result in private benefit or gain; rather, RCW 42.52.160(1) requires that the e-mail be sent "for" that purpose. As RCW 42.52.900 explains: "The citizens of the state expect all state officials and employees to perform their public responsibilities in accordance with the highest ethical and moral standards and to conduct the business of the state only in a manner that advances the public's interest."
¶ 21 The Board did not err by concluding that Ms. Knudsen violated RCW 42.52.160(1). Ms. Knudsen's purpose in sending the e-mail was to obtain a personal and private benefit for herself and others. Ms. Knudsen encouraged the e-mail recipients to contact legislators regarding two bills designed to give her more job security and a more favorable accounting of her work hours. She urged e-mail recipients to contact legislators regarding these bills, and she provided tips and a form letter to assist the recipients. Ms. Knudsen knew that the two bills in question, if enacted, would improve her position.
¶ 22 Based on this record, the Board did not err by concluding Ms. Knudsen violated RCW 42.52.160(1).
¶ 23 Prohibition Against Lobbying. Ms. Knudsen's use of state resources to send the February 25, 2005 e-mail to lobby or assist in lobbying the legislature for private benefit or gain constituted a violation of RCW 42.52.160(1). Ms. Knudsen argues that her use of state resources to send the e-mail was de minimis. Former WAC 292-110-010(6) defines the de minimis use exception. However, former WAC 292-110-010(6) also identifies six activities where state resources cannot be used, even if the use would otherwise fall within the definition of de minimis. Lobbying is specifically prohibited as an exception to the de minimis rule.
¶ 24 Former WAC 292-110-010(6)(d) references RCW 42.17.190 that specifically prohibits public agencies from using public funds "directly or indirectly for lobbying." In former RCW 42.17.020(27), "lobby" and "lobbying" are defined to include "attempting to influence the passage or defeat of any legislation by the legislature of the state of Washington." Ms. Knudsen's conduct constituted lobbying. She admits that she was trying to influence the passage of two legislative bills by encouraging others to contact their legislators.
¶ 25 Ms. Knudsen argues that her position is supported by the portion of former RCW 42.17.020(27) that states, "[n]either `lobby' nor `lobbying' includes an association's or other organization's act of communicating with the members of that association or organization." She maintains that her e-mail was simply an attempt by a member of an organization to communicate with others in the same organization.
¶ 26 This argument is unpersuasive. The e-mail was not an official communication. Ms. Knudsen testified: "I talked to my union, I said what can I do to help change this situation because everyone said it was terrible. And they said that I could contact the Legislator. That the union couldn't do anything, and the administration couldn't do anything." AR at 140 (emphasis added).
¶ 27 Ms. Knudsen next argues that she was acting on behalf of the union to communicate with other members. To support this argument, Ms. Knudsen refers to her own brief which contains the same assertion, along with her letter to the administrative law judge.
¶ 28 Contrary to these bare assertions, Ms. Knudsen testified that she drafted the e-mail by using language supplied by another adjunct professor, adding her own ideas, adopting it as her own, and then sending it out. Ms. Knudsen also testified that she sent her e-mail because "[o]ur [union] lobbyists had not told the faculty at all about the legislation mentioned in my e-mail and were not lobbying the state legislature regarding the legislation mentioned in my e-mail." AR at 67 (emphasis added). Moreover, Ms. Knudsen failed to establish that she was a union representative.
¶ 29 The February 25, 2005 e-mail does not constitute permissible lobbying by an organization *841 or association and does not fall within the exceptions set forth in former WAC 292-110-010(6).
¶ 30 Unconstitutional Application. Ms. Knudsen argues that the Board's application of RCW 42.52.160(1) and WAC 292-110-010 violated her free speech rights.
¶ 31 The Board entered findings of fact, conclusions of law, and an order. Under RCW 34.05.570(3)(a), this court can grant relief if it determines that "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied."Ms. Knudsen argues that RCW 42.52.160(1) and WAC 292-110-010 are unconstitutional as applied by the Board to her conduct.
¶ 32 The Board asserts that Ms. Knudsen's argument is procedurally flawed because she claims that her employer's e-mail policyas opposed to the Board's orderviolates the federal constitution as applied to her activities. According to the Board, this court cannot consider the constitutionality of the enforcement of the employer's policy because the Board's consideration was limited to whether Ms. Knudsen violated RCW 42.52.160(1) and WAC 292-110-010 as set forth in the Board's order. We agree but we also determine that Ms. Knudsen's argument is unpersuasive on the merits.
¶ 33 "`The constitution allows the regulation of protected speech in certain circumstances.'" Herbert v. Wash. State Pub. Disclosure Comm'n, 136 Wash.App. 249, 259, 148 P.3d 1102 (2006) (quoting City of Seattle v. Huff, 111 Wash.2d 923, 926, 767 P.2d 572 (1989)). For example, speech in public forums is subject to valid time, place, and manner restrictions that "`are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" Bering v. SHARE, 106 Wash.2d 212, 222, 721 P.2d 918 (1986) (quoting United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)). In contrast, speech in nonpublic forums may be restricted if "`the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" City of Seattle v. Eze, 111 Wash.2d 22, 32, 759 P.2d 366 (1988) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). In order to prevail here, Ms. Knudsen must show beyond a reasonable doubt that RCW 42.52.160(1) and WAC 292-110-010 are unconstitutional. Tunstall, 141 Wash.2d at 220. 5 P.3d 691.
¶ 34 Forum analysis is done in two steps. "First, we must determine the type of forum affected by the restriction here: Is it a public forum, a limited public forum, or a nonpublic forum? If the forum is determined to be nonpublic, the restriction is constitutional if it is reasonable in light of the purposes of the forum and is viewpoint-neutral." Herbert, 136 Wash.App. at 263, 148 P.3d 1102. A nonpublic forum is one that is not used for public communication either by tradition or by designation. Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). Regulation of a nonpublic forum need only be reasonable, not the most reasonable. Id. at 264, 148 P.3d 1102. A viewpoint neutral regulation is one not in place "merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46, 103 S.Ct. 948.
¶ 35 Herbert is helpful here. In Herbert, two school teachers were fined by the public disclosure commission (PDC) for using their public employer's facilities in violation of RCW 42.17.130's prohibition on the use of public resources[1] for political purposes. Herbert, 136 Wash.App. at 252, 148 P.3d 1102. Mr. Herbert challenged the PDC decision, arguing that the application of RCW 42.17.130 to their conduct was unconstitutional. He maintained that the provision violated his free speech. Herbert, 136 Wash.App. at 257-58, 148 P.3d 1102.
¶ 36 The court determined that the PDC did not err by determining that Mr. Herbert's conduct violated the statute. Id. at 257, 148 P.3d 1102. The court performed a forum analysis. The court determined that the school's internal mail or computer systems *842 were nonpublic forums, even though members of the public could communicate with school employees using these systems, because members of the public do not have in-person access to the computers or e-mail accounts. Id. at 263-64, 148 P.3d 1102. The court concluded that the prohibition against using public property for a political purpose was a reasonable and viewpoint-neutral restriction of speech taking place in a nonpublic forum. The court affirmed the PDC order. Id. at 253, 264, 148 P.3d 1102.
¶ 37 In discussing whether the statute in question was reasonable and viewpoint neutral, the court explained that:
The internal mail and computer systems exist to facilitate communication between teachers, to ensure efficient sharing of information, and the restrictions on their use do not eliminate or obstruct that purposeexcept to prohibit any use that would constitute political advocacy. The statute was enacted to ensure that public resources are not used to provide advantages to a particular candidate or ballot measure, and the restriction on the use of school systems furthers that purpose.
Id. at 264, 148 P.3d 1102.
¶ 38 Applying the reasoning of Herbert, the Board's application of RCW 42.52.160(1) and WAC 292-110-010 to Ms. Knudsen's e-mail was reasonable and viewpoint neutral. The e-mail system was a nonpublic forum. There is no finding indicating that the e-mail system was open to the public. State e-mail systems, including the system involved here, exist to facilitate communications for purposes of state business. Ms. Knudsen violated the prohibition against the use of state resources for private benefit.
¶ 39 Miscellaneous Claims. Ms. Knudsen claims that she "suffered discrimination, lack of freedom of speech, lack of academic freedom, lack of due process, lack of equal protection, lack of her rights under the First, Fifth, and Fourteenth Amendments, and has endured retaliation from agents of the State of Washington"[2] because of the contents of the February 25, 2005 e-mail. The record does not support these claims. And we decline to consider these arguments because Ms. Knudsen presents no citation to authority to support them. See Cowiche, 118 Wash.2d at 809, 828 P.2d 549.
¶ 40 We affirm the Board's order.
WE CONCUR: SWEENEY and KORSMO, JJ.
NOTES
[1] The school provided computers, e-mails, and mailboxes.
[2] Appellant's Br. at 40.