*24 Korsmo, J.
¶1 Jonathan Sprague challenges the dismissal at summary judgment of his wrongful termination action, arguing that the Spokane Valley Fire Department (SVFD) violated his First Amendment rights. We affirm.
FACTS
¶2 Mr. Sprague served as a captain for SVFD. He formed the Spokane Christian Firefighters Fellowship (SCFF) and in 2011 began distributing newsletters and meeting notices for that group via the SVFD e-mail system. Captain Sprague’s use of the e-mail system begat controversy and spiraled into this litigation.
¶3 His messages concerning SCFF meetings often contained scriptural passages and mentioned the topics being discussed at the meeting. SVFD responded by reminding Captain Sprague that the e-mail system was to be used for business purposes only and that e-mails should not include religious references. SVFD allowed employees to access their personal e-mail while at work, but they were not permitted to make personal use of the department’s system. Sprague complained in writing that the policy constituted religious discrimination. Commissioner Monte Nesbitt responded by letter and disagreed with the complaint. He summarized the SVFD e-mail policy:
You may not use department email to post, discuss, or in any way disseminate communications that are sent for any purpose other than official SVFD business. This means you cannot send messages using your official SVFD email which discuss the Fellowship or any other private purpose. [SVFD] email may only be used to disseminate communications concerning official SVFD business.
If you wish to send personal emails while on duty (if otherwise permitted under [SVFD] policy), you may do so using a personal email account (such as a Hotmail, Gmail, Yahoo, or Comcast account). Using a personal email account, you may only send messages to other personal email accounts. You may *25 not use a personal email account to send messages or solicitations to official SVFD accounts.
Clerk’s Papers (CP) at 147.
¶4 Commissioner Nesbitt also addressed use of physical and electronic bulletin boards:
You may not post flyers, advertisements, or solicitations that contain a religious message, on either the electronic or physical bulletin boards which are maintained by the SVFD.
You may continue to post flyers or advertisements of local events, food drives, and meetings. The posting may contain information as to the organization, the place, the time/date, the contact information, and the event. These type of postings are acceptable for both the electronic and physical bulletin boards. For example, you might post a notice that the Fellowship is meeting at a particular time and place, but the posting may not have a religious content.
CP at 147-48.
¶5 Captain Sprague, however, declined to follow the policy and insisted on using the SVFD e-mail system to distribute information about meetings of the SCFF. He also continued to employ scriptural passages in the e-mails and in bulletin board postings. A series of progressive disciplinary actions ensued. The first action resulted in a letter of counseling concerning misuse of the bulletin boards, followed two weeks later by a letter of reprimand involving misuse of the bulletin boards and the e-mail system. Six weeks later a two shift suspension without pay was imposed due to disobedience of an order and violations of the e-mail and bulletin boards policies. The suspension was stayed pending mediation, but the mediation efforts failed.
¶6 Three months after the suspension, SVFD gave notice of its intent to discharge Captain Sprague. The notice alleged that he had engaged in “conduct unbecoming an officer,” insubordination for violating an order of a superior officer, and had willfully violated department rules, procedures, and personnel policies. CP at 208. The *26 Board of Fire Commissioners accepted the termination recommendation and found that Captain Sprague had failed to obey direct orders in violation of department practice and personnel policies, resulting in just cause for termination.
¶7 Mr. Sprague appealed to the civil service commission which conducted a public hearing at his request. He made a personal argument to the commission and the parties submitted posthearing briefs in lieu of closing argument. The commission upheld his termination. It found that SVFD acted in good faith by imposing progressive discipline and that Mr. Sprague’s insubordination merited termination. It also found that there was no evidence that SVFD applied its internal policies unevenly or discriminated against Mr. Sprague for expressing his Christian views. The commission also went on to note some relevant law relating to valid restrictions that government entities may place on nonpublic fora in the employment context.
¶8 Mr. Sprague did not appeal the civil service commission ruling. Instead, he instituted an action in superior court against SVFD and its chief. The complaint alleged violation of the free speech and freedom of religion guaranties of both the United States and Washington Constitutions, Mr. Sprague’s equal protection rights under both constitutions, the federal civil rights act, and the Washington Law Against Discrimination, ch. 49.60 RCW. The complaint sought reinstatement, damages, injunctive relief, and declaratory relief.
¶9 Eventually, the defendants moved for summary judgment on the basis of collateral estoppel. The plaintiff, in turn, sought partial summary judgment concerning the constitutionality of the SVFD e-mail policy. The competing motions were argued before Judge Kathleen O’Connor of the Spokane County Superior Court. Plaintiff’s counsel told the court that the parties were in agreement about the facts and that his client had been insubordinate; however, the chief’s order that Sprague needed to comply with the e-mail policies was unconstitutional.
*27 ¶10 Judge O’Connor determined that collateral estoppel barred the plaintiff’s cause of action because of the factual findings included in the civil service commission’s ruling. She noted that there was identity of issues, identity of parties, and a final judgment that was not appealed. The motion for partial summary judgment was denied and the defense motion for summary judgment was granted.
¶11 Mr. Sprague timely appealed to this court. A panel heard oral argument on the matter.
ANALYSIS
¶12 This appeal presents two issues that we will address in the following order. First we consider the contention, presented to the trial court by the partial summary judgment motion, that the SVFD e-mail policy is unconstitutional. We then consider whether the trial court properly found the claims barred by the doctrine of collateral estoppel.
¶13 The standards of review governing summary judgment applicable to both issues are well settled. This court sits in the same position as the trial court and considers the issues de novo since our inquiry is the same as the trial court’s inquiry. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. Id. If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. Id.; Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

SVFD E-mail Policy

¶14 The initial question before us involves Mr. Sprague’s First Amendment challenge to the e-mail policy. Specifically, he argues that SVFD applied an antireligion policy that was, therefore, not content neutral. His argument challenges the policy as it was allegedly practiced rather than *28 as it was written. However, we turn initially to the official written policy. Given our disposition of the remaining issue, we consider the policy as it was allegedly applied in that section of this opinion.
¶15 When it is alleged that the government is improperly infringing on free speech rights, the first question is to identify the nature of the forum that is being regulated in order to determine what level of judicial scrutiny applies. Bradburn v. N. Cent. Reg’l Library Dist., 168 Wn.2d 789, 813, 231 P.3d 166 (2010). In a traditional public forum, the government generally can only impose content neutral restrictions on the time, place, and manner of expression, if those restrictions are narrowly tailored to serve a significant government interest and leave open adequate alternative fora. Sanders v. City of Seattle, 160 Wn.2d 198, 209, 156 P.3d 874 (2007). However, in a nonpublic forum, the government may impose restrictions so long as they are “ ‘reasonable in light of the purpose served by the forum and are viewpoint neutral.’ ” City of Seattle v. Eze, 111 Wn.2d 22, 32, 759 P.2d 366 (1988) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). Intermediate to those categories, the government can create limited public fora by opening for use by the public as places for expressive activity. See Widmar v. Vincent, 454 U.S. 263, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981).
¶16 The parties agreed the SVFD e-mail and bulletin board systems were both nonpublic fora.[1] Report of Pro *29 ceedings (RP) at 29, 33. Our precedent compels the same result. Knudsen v. Wash. State Exec. Ethics Bd., 156 Wn. App. 852, 865-66, 235 P.3d 835 (2010) (university e-mail system for employees was a nonpublic forum); Herbert v. Pub. Disclosure Comm’n, 136 Wn. App. 249, 263-64, 148 P.3d 1102 (2006) (school internal mail and computer systems were nonpublic fora).
¶17 The remaining questions are whether the SVFD policy is reasonable and viewpoint neutral. Once again, the parties[2] agreed in the trial court that it was.[3] That conclusion is unassailable. The policy of this state, expressed in the ethics in public service act, ch. 42.52 ROW, is that public resources are to be used for official public business rather than for personal benefit. See Knudsen, 156 Wn. App. at 860-63 (determining that e-mail sent to encourage others to lobby legislature violated de minimis use exception to statute). It would destroy the concept of a nonpublic forum to hold that limiting the use of a government computer system to government business was not reasonable. Accordingly, the written policy was a reasonable policy under the First Amendment to the United States Constitution.
¶18 The written policy also was content neutral. It distinguished between communications related to the SVFD’s business and those that are personal to the employees. It is the nature of the communications, not the viewpoints expressed in them, that matters. There is no discrimination against some messages or in favor of some others. Instead, there is a complete ban on private usage (absent work-related necessity) of the systems without regard to the message conveyed by the sender.
*30 ¶19 The written SVFD policy does not violate the First Amendment.

Collateral Estoppel

¶20 Although the parties did not truly contest the validity of the written policy, Mr. Sprague certainly contests the validity of the policy as he believes SVFD applied it. While we normally would analyze his claims under the First Amendment, our conclusion that he is collaterally estopped by the findings made in the unappealed administrative proceedings makes it unnecessary to consider the challenge to the policy that he believes the department actually followed. Thus, we turn now to the collateral estoppel issue.
¶21 On this claim, Mr. Sprague’s argument is somewhat misfocused. He correctly takes issue with the civil service commission’s legal conclusions, but they are not what cause him problems here. Instead, it is the unchallenged factual determinations concerning the reasons for termination that doom this appeal. The trial court correctly determined that Mr. Sprague’s failure to challenge those determinations by appeal to superior court left him without a viable cause of action.
 ¶22 As relevant to this appeal, the doctrine of collateral estoppel serves to bar litigation where an issue of ultimate fact has already been determined in previous litigation. State v. Mullin-Coston, 152 Wn.2d 107, 113, 95 P.3d 321 (2004). The party seeking to enforce collateral estoppel must establish that (1) the issue previously decided is identical to the one presented, (2) the prior adjudication ended in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted must be the same as the party in the prior litigation, and (4) application of collateral estoppel does not work a substantial injustice. Id. at 114.
¶23 When considering whether to apply collateral estoppel to an administrative action, this court should consider (1) whether the agency, acting within its compe *31 tence, made a factual decision, (2) procedural differences between the agency and a court, and (3) policy considerations. Shoemaker v. City of Bremerton, 109 Wn.2d 504, 508, 745 P.2d 858 (1987). Applying these factors, Shoemaker concluded that civil service commissions can resolve factual issues concerning termination and employment policies and collateral estoppel can be applied to those findings. Id.
¶24 We agree with Mr. Sprague that the commission’s legal conclusions, such as its determination that its rulings complied with the First Amendment,[4] are not subject to estoppel. Courts, not administrative agencies, determine whether the constitution has been complied with. However, Shoemaker confirms that a civil service commission factual finding can be given preclusive effect.
¶25 That is the case here. All of the classical elements for collateral estoppel are satisfied in this case. The issue presented to the civil service commission—whether SVFD discriminated against Mr. Sprague because of religion—is the same issue presented at the heart of this action. The civil service commission action did end in a final decision. The parties are identical. There is no injustice in applying collateral estoppel in this circumstance. Mr. Sprague was the one who presented the issue to the commission; he had a full opportunity to present his case. Indeed, the only potential injustice in this situation would be to SVFD since it could face the possibility of inconsistent judgments arising from its termination of Mr. Sprague.
¶26 The commission made two related factual determinations that are dispositive in this case. First, it determined that “Sprague was not terminated for religious reasons.” CP at 54. Second, it found that “there was no evidence presented ... that the rules were applied unevenly and with discrimination based upon Sprague’s expression of his Christian views.” CP at 55. Like the trial court, we agree that these determinations are inconsistent with this *32 civil action for damages and other relief. Mr. Sprague did not attack those factual findings by further appeal; he may not collaterally attack them by filing a separate lawsuit.
¶27 The determination that there was no alternative “as applied” policy is particularly critical to this case. Much of Mr. Sprague’s claims, including his challenge to the SVFD e-mail policy, presume the existence of a policy of discrimination against the expression of religious viewpoints. Mr. Sprague can only establish the existence of such a policy if he can establish that the otherwise viewpoint neutral SVFD e-mail system policy was applied in a discriminatory manner against religious expression. The civil service commission found as a matter of fact that this was not the case. There was “no evidence” of any such practice. It was unsurprising that the SVFD’s complaints to Mr. Sprague involved his use of religious expression, because that was the manner in which he repeatedly violated SVFD policy against private use of government property. It should go without saying that a fire department’s business is firefighting, not discussion of religion. Pointing out that Mr. Sprague violated the prohibition against public use in that specific manner did not thereby convert the policy to one of opposition to religious speech any more than challenging use of e-mails to promote chess tournaments or a political candidate could be interpreted as antichess or antipolitical speech. The policy was anti-private-use, not antireligion.
¶28 These factual findings concerning the department’s true motivation for terminating Mr. Sprague’s employment are dispositive of all of his claims in this action.[5] He is not able to show that SVFD had a discriminatory policy against religious speech or that Mr. Sprague was terminated because of his religion. He was terminated for not obeying *33 orders to stop using the e-mail and bulletin boards to promote his private activities. The policy of not permitting private use of the nonpublic forum was reasonable. Mr. Sprague lost his ability to claim that there was an alternative policy when he failed to appeal the civil service commission determination to the contrary.
¶29 The trial court correctly estopped Mr. Sprague from challenging the commission’s findings. There was no error.
¶30 Affirmed.
Lawrence-Berrey, J., concurs.

 To the extent appellant’s briefing in this court can be read otherwise, he cites to no evidence that would support finding the systems constitute limited public fora. There is no evidence that SVFD has ever opened either system to the public generally or permitted expressive activity. Rather, both of these systems have been reserved for internal, official business only. What limited exceptions are allowed are narrowly drawn and exclude expressive content. Specifically, SVFD allows limited personal use of the e-mail system when it is incidental to work, like arranging for a babysitter because of the necessity of working late or permitting employees to post flyers about events or occasions. Consequently, these fora must be considered nonpublic.

 While it may seem to the casual reader that Sprague conceded the entire issue in the trial court, such is not the case. There he argued the issue from an “as applied’’ standpoint, while here we analyze only the facial text of the policy, an issue that was not disputed below.

 Sprague’s counsel told the trial judge: “That written policy would be facially content neutral; it allows for some personal use and it has some proscriptive use. But it does not, on its face, say personal use would be allowed except for if it has a religious viewpoint.’’ RP at 27.

 CP at 55-56.

 Shoemaker involved a similar finding by a civil service commission. There a demoted deputy police chief contended that his demotion was the result of retaliatory action. The commission found otherwise. 109 Wn.2d at 505-07. Our court concluded that the finding was factual in nature and should be given preclusive effect due to collateral estoppel. Id. at 507-13.