# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 68815-4-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PETER JAMES CARR, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 18, 2014 |
| | ) | |

2014 FEB 18 AM 9:49
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

DWYER, J. — Peter Carr was arrested in connection with two incidents involving young girls, both of which occurred in June 2011 at Federal Way thrift stores. The first incident occurred when Carr rubbed his hand across 8-year-old M.L.'s breast area. The second occurred when Carr asked 9-year-old K.W. whether she liked the leotard he was holding, followed her from aisle to aisle, and lowered his pants to expose his genitals encased in a "pink, sparkly bikini bottom." Carr was charged with one count of child molestation in the first degree and one count of communicating with a minor for immoral purposes. Immediately prior to trial, Carr's attorney unsuccessfully moved to sever the counts for trial. However, he did not renew this motion before or at the close of the evidence. A jury convicted Carr on both counts. We conclude that there was sufficient evidence to support his convictions, that he received effective

assistance of counsel, and that the offense of communicating with a minor for immoral purposes is not unconstitutionally vague. Thus, we affirm.

I

In June 2011, when 8-year-old M.L. was shopping at the Deseret Industries thrift store with her mother and her two sisters, a man in the store touched M.L.'s breast area over her shirt. M.L. testified that it was Carr who touched her left breast with his right hand and that his hand "went across" her breast for a period of one second. M.L. stated that Carr did not look at her, did not say anything to her, and did not make any sounds during the encounter.[1] After demonstrating in court the manner in which she had been touched and, in response to the prosecutor's question, "[a]nd what you just demonstrated was rubbing one hand across your breast?" M.L. answered affirmatively. Additionally, prior to testifying in court, M.L. met with a child interview witness specialist and, in a recorded interview, demonstrated five times how the man touched her. During four of the demonstrations, M.L. quickly ran her hand over her breast area, applying minimal pressure.[2] However, during one of the demonstrations, M.L. appeared to apply more pressure, and to move her hand back and forth across her breast area. Also, during this interview, when asked how she was touched, M.L. said, "He just rubbed like that." This recorded interview was

---

[1] Exhibit 4 is the compact disc recording of M.L.'s interview with a King County Prosecutor's child interview witness specialist, which was viewed by the jury. The transcript of that interview was marked as Exhibit 3 but not admitted into evidence.

[2] After the incident, but before being interviewed by the witness specialist, M.L. also demonstrated to her older sister how she had been touched, who described it as follows: "She took her right hand and swiped it across her chest."

- 2 -

shown to the jury.

After the incident, M.L. found her mother, Alma Lopez, at the store and told Lopez that a man had touched her. Her mother did not report the incident to the police or to store personnel at that time. Three days later, Lopez decided to return to Deseret Industries with her daughters to see if M.L. would recognize the man who had touched her. Although M.L. did not want to go to the store and was visibly upset, once they were inside, she told Lopez that the man who had touched her was in the store; however, she did not identify him.

Subsequently, Lopez returned to the store with her children several times. During one visit, Lopez discovered that a man in the store was following them and was staring at M.L. During a later visit, on June 17, 2011, M.L. identified Carr as the man who had touched her, and Lopez notified a store employee who called the manager. The manager approached Carr and said, "it's been reported that you caused a disturbance in the store." Carr hastily left the store. The police were called and officers came to the store and spoke to M.L. and her family. One of the officers asked M.L. to show him how the man had touched her and, obliging, she "used her right hand, open hand, and then rubbed it across her breast line . . . [b]ack and forth a few times."

With regard to the touching of M.L., the State charged Carr by information with child molestation alleged to have occurred between June 1 and June 10, 2011. At trial, Carr asserted an alibi defense but also testified that he had not touched M.L. in the thrift store. Although neither Lopez nor Angelina—M.L.'s older sister—could pinpoint the date of the incident during which M.L. was

touched, Lopez testified that it was on a Saturday between 11:30 a.m. and noon. The testimony of two thrift store employees supported the conclusion that the date of the incident had to have been either Saturday, June 4 or Saturday, June 11. The State requested, and was allowed, to amend the information to allege that the crime took place between June 1 and June 14, 2011. In support of the alibi defense, Carr's employer testified that Carr was working from 5 a.m. to 2 p.m. on both June 4 and June 11.

Soon after the incident involving M.L., a man lowered his pants and exposed part of a women's bathing suit he was wearing to nine-year-old K.W. while she was shopping at a Goodwill store with her mother. This took place on either June 21 or June 29, 2011. K.W. was shopping in the girl's clothing section and her mother was looking at women's clothing nearby. K.W. encountered a man who showed her a leotard on a hanger and asked her if she liked it, adding that he liked it. K.W. did not say anything to the man and walked away. She went to a different aisle and the man followed her; she again went to a different aisle and again the man followed her. At that point, K.W. testified, the man, who was about 10 feet away, looked down and pulled his pants down to the end of his underwear, which K.W. described as a "pink, sparkly bikini bottom." K.W. stated that his pants were down for a few seconds, that he appeared to be "scratching his butt," and that he was grinning. Additionally, K.W. thought he had pulled his pants down on purpose. In response to the prosecutor's question, "Could you see the man's privates?" K.W. said that she could not. However, K.W.'s mother, in response to the prosecutor's question as to whether K.W. had been able to

see the man's genitalia, said that K.W. "said she could see the shape of it, with the tight-fitting bikini bottom."

Following this incident, K.W. walked quickly back to her mother, who was in the women's section of the store. Although she told her mother that a man had talked to her, she waited until they had left the store to report that the man had showed her his underwear. She waited, she explained, because she considered it a private subject that was "weird" to talk about. Once they returned home, K.W.'s mother called the police.

The police obtained surveillance video showing Carr entering the Goodwill store at 3:56 p.m., leaving at 4:29 p.m., re-entering at 5:09 p.m., K.W. and her mother entering at 5:15 p.m., and Carr leaving at 5:20 p.m.[3] Police circulated an alert to retail security with a still picture. On July 7, 2011, after Sears' security staff recognized Carr, the police arrested him in his van in a nearby parking lot. When he was arrested, Carr was wearing a bright pink women's swimsuit under his clothing. Carr owned two women's one-piece bathing suits that he wore under his clothing when he was at home and sometimes in public.

The King County Prosecutor charged Carr with one count of child molestation in the first degree and one count of communicating with a minor for immoral purposes. Prior to trial, Carr's attorney moved to sever the two charged counts for trial. This motion was denied. Carr's attorney did not thereafter renew

---

[3] Although these times are three hours behind the time stamps reflected by the surveillance video, Officer Kristopher Krusey explained that, during the course of his investigation, he discovered that there was a three-hour discrepancy between the time stamp and the actual time when the video was recorded. Report of Proceedings (March 28, 2012) at 749-50.

the severance motion before or at the close of the evidence. The jury found Carr guilty on both counts. The trial court imposed a sentence of a maximum of life in prison with a minimum of 68 months of incarceration on the child molestation charge and a consecutive 364-day suspended sentence on the charge of communicating with a minor for immoral purposes.

Carr appeals.

II

Carr contends that there was insufficient evidence to support his conviction of child molestation in the first degree. This is so, he avers, because the State failed to prove that the touch over M.L.'s shirt was done for sexual gratification. His contention is unavailing.

When reviewing a sufficiency of the evidence challenge, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). This appellate standard of review is designed to ensure that the trial court fact finder reached the "subjective state of near certitude of the guilt of the accused," required by the Fourteenth Amendment's proof beyond a reasonable doubt standard. Jackson, 443 U.S. at 315. When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829

P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Salinas, 119 Wn.2d at 201. "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

To convict Carr of child molestation in the first degree, the State was required to prove that Carr had sexual contact with a child under the age of 12 who was not his wife or domestic partner and who was at least 36 months younger than him. RCW 9A.44.083(1). The pertinent statute defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). The breast area is a sexual or intimate part of a person. State v. Jackson, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). Thus, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Carr touched M.L.'s breast area for the purpose of sexual gratification.[4]

---

[4] Pernicious language has been imported into the standard of review: specifically, that evidence of sexual gratification is insufficient if it is "susceptible of innocent explanation." State v. Powell, 62 Wn. App. 914, 918, 816 P.2d 86 (1991) (although the court recited the proper standard at the beginning of its opinion, it later indicated that the evidence was insufficient because it was "susceptible of innocent explanation"); State v. Whisenhunt, 96 Wn. App. 18, 24, 980 P.2d 232 (1999) (distinguishing Powell by holding that the evidence was not open to innocent explanation); State v. Price, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005) (also distinguishing Powell by holding that the evidence was not "susceptible of innocent explanation"), aff'd on other grounds, 158 Wn.2d 630, 146 P.3d 1183 (2006). If this were the standard, "child molestation convictions would be subject to dismissal or reversal simply because a jury could believe a nonsexual explanation for the behavior." State v. Veliz, 76 Wn. App. 775, 779 n.6, 888 P.2d 189 (1995).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Carr touched M.L.'s breast area for sexual gratification. "Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification." State v. Powell, 62 Wn. App. 914, 917, 816 P.2d 86 (1991). However, "we require additional proof of sexual purpose when clothes cover the intimate part touched." State v. Harstad, 153 Wn. App. 10, 21, 218 P.3d 624 (2009). Rubbing of an intimate area is sufficient additional proof to establish a sexual purpose. Harstad, 153 Wn. App. at 22. Here, the additional proof of sexual purpose is supplied by evidence in the record that Carr rubbed his hand back and forth across M.L.'s breast area.[5] Thus, although M.L. was wearing a shirt that covered her breast area, evidence that Carr rubbed his hand back and forth across her breast area was sufficient to allow a rational trier of fact, viewing the evidence in the light most favorable to the State, to conclude beyond a reasonable doubt that Carr touched M.L.'s breast area for sexual gratification.

III

Carr next contends that there was insufficient evidence presented at trial to support his conviction of communicating with a minor for immoral purposes.

---

We adhere to the view we expressed in Veliz: "the correct test is that recited by the Powell court at the beginning of its opinion: whether, as a matter of law, there is sufficient evidence from which a rational trier of fact could find all the elements of the crime beyond a reasonable doubt. 62 Wn. App. at 916." Veliz, 76 Wn. App. at 779 n.6.

[5] Although evidence as to whether this took place was in conflict, the evidence before the jury was sufficient for the fact finder to find that this occurred. It is for the trial fact finder to resolve conflicts in testimony. Carver, 113 Wn.2d at 604.

This is so, he avers, because there was insufficient evidence admitted to prove that his communication with K.W. was for an immoral sexual purpose. We disagree.

RCW 9.68A.090(1) reads, in pertinent part: "[A] person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." The word "communicate" means spoken word or course of conduct. State v. Schimmelpfennig, 92 Wn.2d 95, 103-04, 594 P.2d 442 (1979). See also State v. Jackman, 156 Wn.2d 736, 748, 132 P.3d 136 (2006) ("a defendant communicates with a minor under RCW 9.68A.090 if he or she *invites* or *induces* the minor to engage in prohibited conduct"). Ultimately, "the statute prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." State v. McNallie, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993). Accordingly, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Carr communicated with K.W. for the predatory purpose of promoting her exposure to and involvement in sexual misconduct.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Carr communicated with K.W. for the predatory purpose of promoting her exposure to and involvement in sexual misconduct. Carr held up a leotard for K.W. to see and asked her whether she liked it, adding that he did. When she moved away to a

different aisle without answering, he followed her. When she again moved away to a different aisle, he again followed her. Finally, when he was a short distance away, while grinning, he pulled down his pants and displayed his pink, sparkly[6] women's bathing suit, which revealed the shape of his genitals. Based on this set of circumstances, a rational trier of fact could conclude that Carr's actions were meant to invite or induce K.W. to engage in prohibited conduct, thereby promoting her exposure to and involvement in sexual misconduct.[7]

IV

Carr next contends that we should reverse his conviction on the charge of communicating with a minor for immoral purposes, asserting that the statute is unconstitutionally vague as applied to his conduct. This is evidenced, he argues, by the jury's request for a definition of "immoral purposes of a sexual nature." We disagree.

We review the constitutionality of a statute de novo. City of Spokane v. Neff, 152 Wn.2d 85, 88, 93 P.3d 158 (2004). However, "[t]he mere need for statutory construction does not render a statute unconstitutional." State v. Evans, 177 Wn.2d 186, 203, 298 P.3d 724 (2013). It is presumed that a statute is constitutional unless its unconstitutionality appears beyond a reasonable doubt, a showing which must be made by the challenging party. City of Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988).

---

[6] The fact that the underwear was pink is relevant as tending to show that Carr was using it to attract children. See State v. Hosier, 157 Wn.2d 1, 13-14, 133 P.3d 936 (2006).

[7] In his statement of additional grounds, Carr asserts that there was insufficient evidence to support his conviction of communicating with a minor for immoral purposes. We reject his duplicative argument.

- 10 -

"The due process vagueness doctrine seeks to ensure that the public has adequate notice of what conduct is proscribed and to ensure that the public is protected from arbitrary ad hoc enforcement." State v. Saunders, 132 Wn. App. 592, 599, 132 P.3d 743 (2006). "The vagueness doctrine is violated if the provision (1) fails to define the criminal offense so that ordinary people can understand what conduct is proscribed and (2) fails to provide ascertainable standards of guilt to prevent arbitrary enforcement." Saunders, 132 Wn. App. at 599. However, "a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." Eze, 111 Wn.2d at 27. Indeed, "'one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" Evans, 177 Wn.2d at 203 (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S. Ct. 329, 96 L. Ed. 367 (1952)). Consequently, "the presumption in favor of a law's constitutionality should be overcome only in exceptional cases." Eze, 111 Wn.2d at 28.

This is not an exceptional case. After being instructed that an essential element of the crime of communicating with a minor for immoral purposes was that Carr communicated with K.W. for "immoral purposes of a sexual nature," the jury asked the judge to define "immoral purposes of a sexual nature." The judge declined to instruct the jury further. From this, Carr contends that "[t]he jury's search for a definition of 'immoral purpose of a sexual nature' demonstrates the vagueness of the term when applied to Mr. Carr's case." However, this inference of unconstitutional vagueness that Carr urges us to draw belies the directive that

we presume a statute to be constitutional. The jury's request for a more detailed definition of one of the elements is open to any number of benign explanations. It does not, however, demonstrate beyond a reasonable doubt that the statute fails to define the criminal offense so that ordinary people can understand what conduct is proscribed. Neither does it establish that the statute fails to provide ascertainable standards of guilt to prevent arbitrary enforcement.

Carr spoke to K.W. when they were alone, followed her repeatedly when she moved away from him, and, grinning, pulled down his pants when he was standing close to her, revealing the shape of his genitals encased in his tight pink women's swimsuit bottom. An ordinary person would understand that Carr's conduct was at least "perilously close to an area of proscribed conduct." See Evans, 177 Wn.2d at 203. Accordingly, the statute is not unconstitutionally vague as applied to him in these circumstances.

V

Carr next contends that he received ineffective assistance of counsel. This is so, he avers, because his counsel failed to renew his motion to sever the two charged counts before or at the close of the evidence. Carr fails to establish an entitlement to appellate relief on this claim.

"In order to prevail on an ineffective assistance claim, the defendant must demonstrate '(1) deficient performance, that his attorney's representation fell below the standard of reasonableness, and (2) resulting prejudice that, but for the deficient performance, the result would have been different.'" State v. Mullins, 158 Wn. App. 360, 371, 241 P.3d 456 (2010) (quoting State v. Hassan,

- 12 -

151 Wn. App. 209, 216-17, 211 P.3d 441 (2009)).  In evaluating an ineffective assistance of counsel claim, this court "must begin with 'a strong presumption counsel's representation was effective' and must base its determination on the record below."  In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 206, 53 P.3d 17 (2002) (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).  "The defendant alleging ineffective assistance of counsel 'must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'"  Hutchinson, 147 Wn.2d at 206 (quoting McFarland, 127 Wn.2d at 336).

The record supports the proposition that Carr's trial counsel had legitimate tactical reasons for not renewing the motion to sever the two counts for trial.  First, as the case played out, the evidence against Carr on each count was not overwhelming.  On appeal, as to each count, Carr's appellate counsel advances in good faith the argument that the evidence on both counts was constitutionally insufficient.  It is easy for us to envision Carr's trial counsel being of a like mind.  Carr's trial counsel could have been of the opinion that Carr would be acquitted by the jury on each count—especially given the testimony admitted in support of his alibi defense to the felony count.  Given the evidence admitted, which the jury was free to view in a manner beneficial to Carr (unlike an appellate court on appeal), and given appellate counsel's good faith view of the evidence—that it was constitutionally insufficient—Carr's trial counsel, for tactical reasons, may have desired to proceed to a jury, on both counts, rather than risk retrial on either count.

This was especially true with respect to the felony charge. At trial, the testimony came out in a manner not anticipated by the prosecution, which forced the prosecution to seek leave to amend the charging document. This unanticipated testimony was consistent with Carr's alibi defense. Although neither the State nor the court, on its own motion, could have moved to sever the counts during trial without Carr's consent, CrR 4.4(c)(2)(ii), if Carr made such a motion the decision would have been up to the trial judge. Carr could not control the trial court's exercise of discretion as to which of the counts to sever for retrial and which to allow to go to the jury for decision. It was a legitimate tactical decision for Carr to wish to see the felony count—bolstered by the evidence supporting his alibi defense—go to the jury.[8]

In short, trial counsel had reason to believe that the defense of the felony count had gone better than anticipated. Similarly, for the same reasons that appellate counsel possesses a good faith belief that the evidence on both counts was weak, so can we envision Carr's trial counsel being of the same view. Thus, we can envision legitimate tactical reasons for Carr's trial counsel opting to have both counts proceed to verdict. Thus, Carr fails to establish deficient

---

[8] On appeal, Carr highlights certain evidence relevant to the communicating with a minor charge: "The evidence that Mr. Carr was wearing a hot pink women's swim suit under his clothing and that [the child] thought she saw him in a sparkly bikini bottom was too inflammatory to be admitted in his trial for child molestation."

Had Carr renewed the motion to sever, the trial court—presented with this very contention—may have agreed and ruled to sever the child molestation charge, allowing the misdemeanor count to go to the jury. However, such a ruling would have deprived Carr of the advantage gained from the unanticipated testimony as to the dates on which the touching of M.L. must have occurred. On a retrial, the State might be better prepared to meet the alibi defense. Carr's trial counsel, who performed ably, could have had such tactical concerns in mind in determining not to renew the motion to sever.

- 14 -

performance on the part of his trial counsel.[9,10]

## VI

Carr next contends that prosecutorial misconduct denied him a fair trial. This is so, he asserts, because during closing argument the prosecutor improperly (1) misstated the burden of proof, (2) misrepresented the facts of the case, and (3) made arguments that appealed to the jurors' fears and prejudices about sex offenders. Again, Carr does not demonstrate an entitlement to appellate relief.

To establish prosecutorial misconduct, Carr must first show that the prosecutor's statements were improper, and then show that Carr was prejudiced as a result. State v. Emery, 174 Wn.2d 741, 759-65, 278 P.3d 653 (2012). However, "[i]f the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Accord State v. McKenzie, 157 Wn.2d 44, 53 n.2,

---

[9] In his statement of additional grounds, Carr contends that he was prejudiced by virtue of the trial court denial of his original motion to sever. However, where a defendant does not renew his or her motion to sever counts before or at the close of the evidence, the issue is waived and we will address it only within the discussion of ineffective assistance of counsel. CrR 4.4(a); State v. McDaniel, 155 Wn. App. 829, 858-59, 230 P.3d 245 (2010). Carr did not renew his motion to sever before or at the close of the evidence. Thus, we do not consider whether the trial court erred by denying his pretrial motion to sever.

[10] In his statement of additional grounds, Carr asserts an alternate ground for his ineffective assistance claim: specifically, that his counsel did not do as Carr requested on several occasions. These included failing to remind the jury of Carr's time cards showing that he worked on June 4 and June 11, failing to remind the jury of facts relating to Carr's alibi and M.L.'s school schedule, failing to provide Carr with the dates during which Carr's picture appeared on television in relation to law enforcement seeking to apprehend him, and failing to provide Carr with a physical copy of those broadcasts. However, because these arguments are not supported by credible evidence in the record, we do not review them. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (citing RAP 10.10(c)).

134 P.3d 221 (2006) (recognizing that "the absence of an objection by defense counsel 'strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial'" (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990))). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making this determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." Emery, 174 Wn.2d at 762.

First, Carr contends that the prosecutor misstated the burden of proof during closing argument by saying, "If, as you sit in that deliberation room, you can say, 'I believe [M.L.],' and you can say, 'I believe [K.W.],' that is enough to end your inquiry. That is enough to convict the defendant." "[I]t is an unassailable principle that the burden is on the State to prove every element and that the defendant is entitled to the benefit of any reasonable doubt. It is error for the State to suggest otherwise." State v. Warren, 165 Wn.2d 17, 26-27, 195 P.3d 940 (2008). Although Carr did not object to the prosecutor's statement, he is correct that the prosecutor's statement was improper. However, prior to closing argument, the jury had been properly instructed as to the burden of proof

and the definition of reasonable doubt.[11] Had Carr interposed an objection and

_____

[11] The pertinent language from the jury instructions is as follows:

The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.

. . .

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Jury Instruction 2.

To convict the defendant of the crime of child molestation in the first degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That during a period of time intervening between June 1, 2011 through June 14, 2011, the defendant had sexual contact with M.V.L.;
(2) That M.V.L. was less than twelve years old at the time of the sexual contact and was not married to the defendant and was not in a state registered domestic partnership with the defendant;
(3) That M.V.L. was at least thirty-six months younger than the defendant; and
(4) That this act occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count I.
On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count I.

Jury Instruction 8.

To convict the defendant of the crime of communicating with a minor for immoral purposes, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about June 29, 2011, the defendant communicated with K.W. for immoral purposes of a sexual nature;
(2) That K.W. was a minor; and
(3) That this act occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count II.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count II.

requested a curative instruction, the court could easily have instructed the jury to be guided by its prior instructions. Because the asserted error could have been remedied by a curative instruction, Carr is not entitled to appellate relief.[12]

Next, Carr contends that the prosecutor misrepresented the facts of the case during closing argument. Specifically, Carr objects to the prosecutor's use of the word "groped" when describing Carr's contact with M.L., and the prosecutor's use of the word "exposed" when describing Carr's lowering of his pants in close proximity to K.W. "The propriety of a prosecutor's conduct is 'reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given.'" State v. Reed, 168 Wn. App. 553, 577, 278 P.3d 203 (quoting State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994)), review denied, 176 Wn.2d 1009, 290 P.3d 995 (2012). "In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence." Reed, 168 Wn. App. at 577.

The prosecutor did not misrepresent facts. Carr's claim of error stems from his misapprehension of the evidence in the record. As explained, there was evidence in the record that Carr rubbed his hand back and forth across M.L.'s breast area, and that Carr lowered his pants to reveal the shape of his genitals to K.W. The prosecutor's use of the word "groped" is supported by the evidence of Carr rubbing his hand back and forth across M.L.'s breast area. The prosecutor's use of the word "exposed," taken in context, does not suggest an

---

Jury Instruction 11.

[12] In his statement of additional grounds, Carr asserts that the prosecutor misstated the burden of proof. We reject his duplicative argument.

- 18 -

assertion that Carr exposed his bare genitals; instead, K.W.'s mother was asserting that he exposed the shape of his genitals beneath his tight swimsuit, which is supported by evidence in the record. It was reasonable, therefore, for the prosecutor to argue from this evidence that Carr "groped" M.L. and "exposed" himself to K.W. Accordingly, the prosecutor's conduct was not improper.[13]

Next, Carr contends that the prosecutor improperly appealed to the jurors' fears and prejudices about sex offenders when she punctuated her rebuttal argument with the statement: "He is the guy that parents warn their kids about. Find him guilty."

"Prosecutors have a duty to seek verdicts free from appeals to passion or prejudice." State v. Perez-Mejia, 134 Wn. App. 907, 915, 143 P.3d 838 (2006). "Accordingly, a prosecutor engages in misconduct when making an argument that appeals to jurors' fear and repudiation of criminal groups or invokes racial, ethnic, or religious prejudice as a reason to convict." Perez-Mejia, 134 Wn. App. at 916. However, "[t]he propriety of a prosecutor's conduct is 'reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given.'" Reed, 168 Wn. App. at 577 (quoting Russell, 125 Wn.2d at 85-86). Because Carr's counsel did not object at trial, any error was waived "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61.

---

[13] In his statement of additional grounds, Carr also objects to the prosecutor's use of the words "groped" and "fondled." We reject his duplicative argument.

Although the prosecutor's conduct here was not as egregious as in <u>Perez-Mejia</u>, where the prosecutor improperly exhorted the jury to convict the defendant in order to send a message to gangs, the prosecutor's statement was improper. While only a small portion of the argument was inflammatory, considered in light of the issues in the case—notably, that the two incidents showed a propensity to prey on children—this appeal to the jurors' aversion toward pedophiles was magnified. Accordingly, the prosecutor's statement was improper.

Nevertheless, Carr is not entitled to appellate relief. Unlike in <u>Perez-Mejia</u>, here there was no objection interposed to the improper argument. Had there been such an objection, the trial court could have issued a proper curative instruction. We are not convinced that the challenged conduct was so flagrant and ill-intentioned that such a curative instruction would not have constituted an adequate remedy.

VII

Carr makes a number of contentions in his statement of additional grounds that were not made by his attorney on appeal. None are availing.

Carr contends that law enforcement officers failed to collect exonerating evidence, requiring that the child molestation case be dismissed. This is so, he asserts, because the officer who was called to Deseret Industries on June 17, 2011, failed to secure the surveillance video from June 3 to June 17. There is no trial court record with respect to this claim. Thus, there is nothing for us to review. No entitlement to appellate relief is established.

Carr next contends that the probable cause determination was improperly

made with respect to the incident involving M.L. This is so, he avers, because the certification for determination of probable cause describes Carr as "rubbing" M.L.'s breast, which is not how the dispatched officer described what happened. However, because Carr did not raise this issue in the trial court, there is no record for us to review. Again, no entitlement to appellate relief has been established.

Carr next raises several issues that, in effect, contend that there was a conspiracy between the prosecutor and his defense attorney to suppress certain evidence. However, because these arguments are not supported by credible evidence in the record, we do not review them. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (citing RAP 10.10(c)).

Carr next offers affidavits from his sister and mother, wherein they both assert that a juror approached them and spoke with them regarding the jury's deliberation following the verdict. Because these arguments are not supported by credible evidence in the record, we do not review them. Alvarado, 164 Wn.2d at 569 (citing RAP 10.10(c)).

Carr next contends that the charge of communicating with a minor for immoral purpose should be dismissed. The basis for this contention is his assertion that initially the police did not have any evidence that Carr had committed the crime. In essence, Carr appears to be challenging the trial court's denial of his Knapstad[14] motion. However, the denial of a Knapstad motion is not appealable after a trial has been conducted. State v. Olson, 73 Wn. App. 348,

_____

[14] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

357 n.6, 869 P.2d 110 (1994).  Thus, we do not further consider Carr's contention.

Finally, Carr contends that M.L.'s mother testified untruthfully.  Credibility determinations are the province of the trial court fact finder.  <u>Carver</u>, 113 Wn.2d at 604.

Affirmed.

_Dwyer, J._

We concur:

_Appelwick, J._                    _Becker, J._