[No. 9030–5–I. Division One. January 11, 1982.]

THE CITY OF EVERETT, *Appellant,* v. BILL O'BRIEN, *Respondent.*

*Seth R. Dawson, Assistant City Attorney,* for appellant.

*Douglas B. Marsh* and *Jeffrey E. Pratt,* for respondent.

DURHAM, J.—Bill O'Brien was cited for violating Everett Municipal Code (EMC) 20.08.090(B)(3) by disturbing his neighbors with motorcycle noise. The court reserved its verdict and took under advisement sua sponte the question of whether or not the City of Everett must introduce decibel readings to establish a violation of the code. The court stated that if decibel readings were not required, the defendant was guilty; if readings were required, the charge must be dismissed. The court later dismissed the charges against O'Brien because the City did not introduce decibel

readings. The Superior Court affirmed the order of dismissal.

The City of Everett assigns error to the finding that, in a prosecution under EMC 20.08.090(B)(3),[1] the City must establish that the noise in question exceeded the decibel levels set forth in EMC 20.08.030[2] through 20.08.050.[3] The City interprets EMC 20.08.090 as permitting proceedings based either on a general public disturbance theory or on the creation of noise exceeding specified decibel levels. The City argues that requiring decibel level readings would unreasonably thwart the policy of the ordinance because sound level readings are not always obtainable. Also, a "public disturbance noise" within the permissible range of sound might disturb the sleep and repose of others, and be unlawful.

■ ■ The same rules of statutory construction apply to the interpretation of municipal ordinances as to the interpretation of state statutes. *Seattle v. Green,* 51 Wn.2d 871, 874, 322 P.2d 842 (1958). The primary object in interpreting a statute is to ascertain and give effect to the intent of

---

[1] EMC 20.08.090(B)(3) states:

"*Public Disturbance Noises.* It is unlawful for any person to cause, or for any person in possession of property to allow to originate from the property, sound that is a public disturbance. No sound source specifically exempted from a maximum permissible sound level by this chapter shall be a public nuisance noise or public disturbance noise insofar as the particular source is exempted. The following sources of sound shall be public disturbance noises and are subject to regulation under the provisions of Sections 20.08.030 through 20.08.050:

". . .

"3. The creation of frequent, repetitive or continuous noise in connection with the starting, operation, repair, rebuilding or testing of any motor vehicle, motorcycle, off-highway vehicle or internal combustion engine within District 1 so as to unreasonably disturb or interfere with the peace, comfort and repose of owners or possessors of real property;"

[2] EMC 20.08.030 states:

"It is unlawful for any person to cause or permit noise to intrude into the property of another person which noise exceeds the maximum permissible noise levels set forth in Sections 20.08.040 and 20.08.050."

[3] EMC 20.08.040 and 20.08.050 set forth maximum permissible noise levels and modifications to maximum permissible noise levels.

the legislature. *See Janovich v. Herron,* 91 Wn.2d 767, 771, 592 P.2d 1096 (1979). In case of doubt, statutes should be read as a whole and construed to avoid strained or absurd consequences. *Carman v. Pugnetti,* 23 Wn. App. 772, 774, 598 P.2d 745 (1979). *See also Silver Shores Mobile Home Park, Inc. v. Everett,* 87 Wn.2d 618, 620–21, 555 P.2d 993 (1976); *State v. Taylor,* 30 Wn. App. 89, 94–95, 632 P.2d 892 (1981). If a statute is susceptible to two interpretations, that interpretation which best advances the overall legislative purpose should be adopted. *Hart v. Peoples Nat'l Bank,* 91 Wn.2d 197, 588 P.2d 204 (1978).

The intent of the City of Everett in adopting its noise ordinance was

> to control the level of noise in a manner which promotes commerce; the use, value, and enjoyment of property; sleep and repose; and the quality of the environment.

EMC 20.08.010(A). Although EMC 20.08.090(B)(3) could be interpreted as the trial court chose, we believe that the interpretation suggested by the City is more reasonable. The trial court's interpretation of EMC 20.08.090(B)(3) calls for measures which frustrate the intent of the ordinance as a whole. Requiring a police officer to promptly appear with a sound meter whenever a noise complaint is filed unreasonably restricts the City's ability to control the level of noise in the community.

Although we do not interpret EMC 20.08.090(B)(3) to require decibel level readings to establish a violation, the reference to sections 20.08.030 through 20.08.050 is not superfluous. The ordinance interpreted as a whole prohibits noise which is in excess of specified decibel levels, as well as noise which otherwise unreasonably disturbs the peace, comfort and repose of others. Section 20.08.030 makes it unlawful to create noise in excess of the decibel levels as set forth in 20.08.040 and 20.08.050. EMC 20.08.090(B), the section whose meaning is disputed, prefaces a list of six sources of sound which are "public disturbance noises". EMC 20.08.090(B) states that

[t]he following sources of sound shall be public distur-

bance noises *and are* subject to regulation under the provisions of Sections 20.08.030 through 20.08.050 . . . (Italics ours.) Section 20.08.090(B)(3) then describes noise created in connection with the operation of a motorcycle, the "public disturbance noise" for which O'Brien was cited. The use of the conjunctive indicates that motorcycle noise is a public disturbance noise under the somewhat subjective criteria of EMC 20.08.090(B)(3) and that the noise is also unlawful if it meets the precise criteria of EMC 20.08.040 and 20.08.050.

O'Brien also argues that the trial court's determination that EMC 20.08.090(B)(3) requires decibel readings saved the ordinance from a constitutional challenge. He contends that the City's interpretation of the ordinance would render the ordinance unconstitutional because there would be no ascertainable standards against which a citizen could judge his conduct.

▆ To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that people of reasonable understanding are not required to guess at the meaning of the enactment. *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). However, the constitution does not require impossible standards; all that is necessary is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Tacoma v. Vance,* 6 Wn. App. 785, 790, 496 P.2d 534 (1972).

Under the City's interpretation of the ordinance, O'Brien's conduct was unlawful because it "unreasonably disturb[ed] or interfere[d] with the peace, comfort and repose of owners or possessors of real property". This language adequately describes the proscribed conduct. A person of ordinary understanding is capable of determining when noise from his motorcycle is unreasonably disturbing the peace, comfort, and repose of others. This standard is more helpful than decibel levels to the average citizen in determining whether or not his conduct is unlawful.

Finally, O'Brien suggests that this appeal should be dismissed because the issues before the court are moot. Since the date of filing this appeal, the City of Everett has amended its noise ordinance. The ordinance now specifically states that sound level readings are not required in criminal proceedings under EMC 20.08.090. Also, the definition of "public nuisance noise" has been amended.

■ Despite the amendments to the noise ordinance, the appeal is not moot. A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights. *Davenport v. Elliott Bay Plywood Machs. Co.*, 30 Wn. App. 152, 153, 632 P.2d 76 (1981). The City's amendment of the noise ordinance does not mean that our interpretation of the former noise ordinance is merely the resolution of an abstract question. The question of whether or not the charges against O'Brien should have been dismissed persists. Our resolution of the issues in this case means that O'Brien is now subject to further proceedings.

The Superior Court order affirming the dismissal is reversed and the case remanded for further proceedings.

ANDERSEN, C.J., and RINGOLD, J., concur.