[No. 53501-9. En Banc. July 14, 1988.]

THE CITY OF SEATTLE, *Respondent,* v. JOHN O.J. EZE, *Petitioner.*

*Robert Adelman* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Betty Ngan, Assistant,* for respondent.

DURHAM, J.—The defendant in this case challenges the constitutionality of Seattle's ordinance prohibiting disorderly conduct on a bus, which includes "loud or raucous behavior" that "unreasonably disturbs others". Seattle Municipal Code (SMC) 12A.12.040(F). We reject these challenges and affirm the defendant's conviction.

I

FACTS

John Eze boarded a public bus in Seattle on December 5, 1984, and became involved in an altercation with the driver, Nicholas Coleman. Coleman and Eze differ in their accounts of what transpired.

According to Coleman, Eze boarded the bus without paying the fare or showing a pass. Coleman told Eze to "pay as you enter please". Eze "mumbled something inaudible" and walked "about halfway back in the coach". When Coleman again asked Eze to pay, Eze "went into a tirade", calling Coleman "all kinds of names". Eze walked up to the front of the bus, sat down in the seat right behind Coleman, where he began "gesticulat[ing] and everything". At the same time, another passenger was trying to obtain some information from Coleman. Eze stood up between the passenger and Coleman. Coleman asked Eze "if he would kindly have a seat because he was standing up in the front of the coach and he was jeopardizing the safety of [the] passengers". Eze "kept gesticulating and using threatening gestures", so Coleman told him, "[S]ir, if you don't have a

seat I won't be able to operate the coach." Eze "continued to argue." At no point did Eze show him a pass or transfer. Coleman notified his dispatcher of the situation and then stopped the bus to wait for the police to arrive. During the wait, Eze continued to mumble as he had before.

Eze's testimony differed from that of Coleman. He testified that he was from Nigeria and had learned his English there, but that he had spent the last 5 years in Seattle. Eze stated that he did not immediately show the driver his transfer because he was carrying a heavy bag of textbooks. Eze denied that he walked halfway down the bus aisle, testifying instead that he took the seat right behind the driver. When Coleman asked for Eze's fare, Eze asked him to wait "a second" and he would show him the transfer. Coleman immediately "started saying all kinds of obscenities" and "using racial words." Eze showed him his transfer and returned to his seat. Coleman said, "[T]hese foreigners come over here but they don't know how to act." Eze became "very very upset" at this statement. Eze told Coleman to "keep his mouth shut" and to "stop committing a nuisance scene on the bus."

A Seattle Municipal Court judge found Eze guilty of disorderly bus conduct under SMC 12A.12.040(F), which provides as follows:

> A person is guilty of disorderly bus conduct if while on or in a transit coach of the Metro Transit System, and with knowledge that such conduct is prohibited, he or she:
>
> . . .
>
> F. Unreasonably disturbs others by engaging in loud or raucous behavior.

The trial judge found that Eze's behavior was both loud and unreasonable, and, implicitly, that Coleman's testimony was more credible.[1] Eze received a 1–year deferred sentence, on condition that he undergo anger management

---

[1]This being a municipal court trial, the record does not include any written findings of fact. We rely instead on the City's unchallenged summary of the judge's comments made while pronouncing Eze's guilt.

evaluation, pay a crime victims' compensation fee, and not become involved in additional criminal charges.

Eze appealed to King County Superior Court pursuant to RALJ 2.3, where the conviction was reversed on the basis that the ordinance was void for vagueness. The City of Seattle appealed to the Court of Appeals, which upheld the ordinance's constitutionality and reinstated the judgment of the municipal court. *Seattle v. Eze*, 45 Wn. App. 744, 727 P.2d 262 (1986).

This court granted Eze's petition for discretionary review. He challenges the constitutionality of SMC 12A.12-.040(F) with three arguments. He contends that the ordinance is both vague and overbroad, and that it conflicts with a state statute.

# I
## VAGUENESS

An ordinance or statute is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King Cy.*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988). The vagueness doctrine serves two important purposes: to provide fair notice to citizens as to what conduct is proscribed and to protect against arbitrary enforcement of the laws. *State v. Richmond*, 102 Wn.2d 242, 243–44, 683 P.2d 1093 (1984); *State v. Hilt*, 99 Wn.2d 452, 453–54, 662 P.2d 52 (1983).

Despite the broad sweep of the standard stated above, the vagueness doctrine is limited in two significant ways. First, a statute is presumed to be constitutional unless its unconstitutionality appears beyond a reasonable doubt. *State v. Aver*, 109 Wn.2d 303, 306–07, 745 P.2d 479 (1987); *Seattle v. Shepherd*, 93 Wn.2d 861, 865, 613 P.2d 1158 (1980). The burden of proving a statute's vagueness rests with the party challenging its constitutionality. *Aver*, at 307.

Second, impossible standards of specificity are not required. *Kolender v. Lawson*, 461 U.S. 352, 361, 75 L. Ed.

2d 903, 103 S. Ct. 1855 (1983); *Aver,* at 307; *Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 465, 722 P.2d 808 (1986). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. Rockford,* 408 U.S. 104, 110, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). Consequently, a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. As this court has previously stated, "[I]f men of ordinary intelligence can understand a penal statute, *notwithstanding some possible areas of disagreement,* it is not wanting in certainty." (Italics ours.) *State v. Maciolek,* 101 Wn.2d 259, 265, 676 P.2d 996 (1984) (quoting *Spokane v. Vaux,* 83 Wn.2d 126, 129, 516 P.2d 209 (1973)). *See also United States v. Powell,* 423 U.S. 87, 93, 46 L. Ed. 2d 228, 96 S. Ct. 316 (1975) ("'[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.'") (quoting *Nash v. United States,* 229 U.S. 373, 377, 57 L. Ed. 1232, 33 S. Ct. 780 (1913)).

These general limitations are necessary to any analysis of statutory language under the vagueness doctrine. They reflect our deference to the Legislature's constitutional lawmaking role, as well as our recognition of the difficulties that attend legislating in areas such as disorderly conduct, where the terms are difficult to define. *See Smith v. Goguen,* 415 U.S. 566, 581, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974). Moreover, as we have noted elsewhere, our rulings in vagueness cases have themselves tended to be conclusory and vague, failing to provide any "cogent reasoning that is properly generalizable to later applications." *State v. Smith,* 111 Wn.2d 1, 12, 759 P.2d 372 (1988). We should not demand from the Legislature a higher degree of definition and certainty in its official pronouncements than we are capable of producing in our own, lest we appear to be usurping the properly legislative power of defining criminal

elements. *See State v. Smith,* at 13. Therefore, the presumption in favor of a law's constitutionality should be overcome only in exceptional cases.

■ We now apply these standards to the case at hand. The term "loud or raucous" is not inherently vague. We find persuasive the Supreme Court's analysis of this term:

> The contention that the section is so vague, obscure and indefinite as to be unenforceable merits only a passing reference. This objection centers around the use of the words "loud and raucous". While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden.

*Kovacs v. Cooper,* 336 U.S. 77, 79, 93 L. Ed. 513, 69 S. Ct. 448 (1949). *See also Normal v. Stelzel,* 109 Ill. App. 3d 836, 441 N.E.2d 170 (1982) (loud and raucous noise); *State v. Johnson,* 112 Ariz. 383, 542 P.2d 808 (1975) (loud or unusual noise); *Hess v. State,* 260 Ind. 427, 297 N.E.2d 413 (acting in a loud, boisterous, or disorderly manner, causing a loud or unusual noise), *rev'd on other grounds,* 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973); *People v. Fitzgerald,* 194 Colo. 415, 573 P.2d 100 (1978) (unreasonable noise) (and cases cited therein).

Moreover, precedents from both the Supreme Court and this state's Court of Appeals indicate that an ordinance is not impermissibly vague if it uses the phrase "unreasonably disturbs others". The Supreme Court has held that in a disorderly conduct ordinance similar to the present one, use of the term "disturb" does not render a statute impermissibly vague. In *Grayned v. Rockford, supra,* the Court had before it an ordinance that criminalized "the making of any noise or diversion which disturbs or tends to disturb the peace or good order" of school sessions. *Grayned,* at 107–08. In addressing the sufficiency of the term "disturb", the Court stated:

> Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether

normal school activity has been or is about to be disrupted. We do not have here a vague, general "breach of the peace" ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this "particular context," the ordinance gives "fair notice to those to whom [it] is directed."

*Grayned,* at 112. *See also Boos v. Barry,* __ U.S. __, 99 L. Ed. 2d 333, 108 S. Ct. 1157, 1169 (1988).

Similarly, it is apparent that SMC 12A.12.040(F) is limited to the context of activity within a bus. Given this specific context, the prohibited disturbances are easily measured so that citizens have fair notice of what activities are prohibited.

Nor is the ordinance rendered vague by its use of the word, "unreasonably". In *Cameron v. Johnson,* 390 U.S. 611, 20 L. Ed. 2d 182, 88 S. Ct. 1335 (1968), the United States Supreme Court addressed a statute that prohibited "'picketing . . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any . . . county . . . courthouses . . . .'" *Cameron,* at 616. The Court analyzed the specificity of this statute as follows:

The terms "obstruct" and "unreasonably interfere" plainly require no "guess[ing] at [their] meaning." Appellants focus on the word "unreasonably." It is a widely used and well understood word and clearly so when juxtaposed with "obstruct" and "interfere." We conclude that the statute clearly and precisely delineates its reach in words of common understanding.

(Footnotes omitted.) *Cameron,* at 616.

This discussion makes clear that use of "unreasonably" does not render vague a statute that is otherwise specific in nature. Indeed, use of that term provides additional indicia of objectivity, thereby rendering the statute less vague. The Illinois Supreme Court has concluded that use of the word "unreasonable" in a criminal statute "removes the possibility that a defendant's conduct may be measured by its

effect upon those who are inordinately timorous or belligerent." *People v. Raby,* 40 Ill. 2d 392, 395, 240 N.E.2d 595 (1968), *cert. denied,* 393 U.S. 1083 (1969).

Our own Court of Appeals has held that a similarly phrased ordinance was not void for vagueness. In *Everett v. O'Brien,* 31 Wn. App. 319, 641 P.2d 714 (1982), the challenged ordinance prohibited:

> The creation of frequent, repetitive or continuous noise in connection with the . . . operation . . . of any . . . motorcycle . . . so as to *unreasonably disturb* or interfere with the peace, comfort and repose of owners or possessors of real property[.]

(Italics ours.) *Everett,* at 321 n.1. The Court of Appeals found that this language adequately described the prohibited conduct, reasoning that "[a] person of ordinary understanding is capable of determining when noise from his motorcycle is unreasonably disturbing the peace, comfort, and repose of others." *Everett,* at 323. The parallel to the present case is plain.

Finally, the ordinance is not vague as applied to the facts of this case. A person of ordinary understanding would be capable of determining that conduct such as Eze's was prohibited under the ordinance. Accordingly, SMC 12A.12-.040(F) is not unconstitutionally vague, neither on its face nor "as applied".[2]

---

[2]Eze has also argued that the ordinance is rendered vague because it does not specify a particular criminal intent. However, this fact, by itself, does not invalidate the ordinance. The Supreme Court has indicated that the absence of a definition of a specific criminal intent becomes significant only if the statute is otherwise vague. *See Screws v. United States,* 325 U.S. 91, 101–02, 89 L. Ed. 1495, 65 S. Ct. 1031 (1945) (*"*[T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.") Because SMC 12A.12.040(F) is not otherwise vague, it is not rendered invalid by a lack of a specific criminal intent. Indeed, we have upheld vagueness challenges to other disorderly conduct ordinances even though they, too, failed to specify the requisite criminal intent. *See Everett v. O'Brien,* 31 Wn. App. 319, 641 P.2d 714 (1982); *Kennewick v. Keller,* 11 Wn. App. 777, 525 P.2d 267 (1974).

## III
### OVERBREADTH

A statute is overbroad if its prohibitions extend beyond proper bounds and violate the First Amendment's protection of free speech.[3] *Federal Way Family Physicians, Inc. v. Tacoma Stands Up For Life,* 106 Wn.2d 261, 267–68, 721 P.2d 946 (1986). By its very terms, SMC 12A.12.040(F) regulates behavior, not pure speech, and therefore it will not be overturned unless the overbreadth is "both real and substantial in relation to the ordinance's plainly legitimate sweep." *O'Day v. King Cy.,* 109 Wn.2d 796, 804, 749 P.2d 142 (1988); *see Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

To the extent that the ordinance affects "speech", it does not do so in violation of the First Amendment. The constitution allows for the regulation of protected speech under certain circumstances. *Bering v. Share,* 106 Wn.2d 212, 221–22, 721 P.2d 918 (1986), *cert. dismissed,* 107 S. Ct. 940 (1987). For example, restrictions on the *volume* of speech do not necessarily violate the First Amendment, even when that speech occurs in an area traditionally set aside for public debate—the so–called "public forum". *See Kovacs v. Cooper,* 336 U.S. 77, 89, 93 L. Ed. 513, 69 S. Ct. 448 (1949) (holding ordinance not overbroad in restricting "loud and raucous noises" made by sound trucks with amplification equipment operated in city streets); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983) (speech in public forums is subject to valid time, place, and manner restrictions); *Bering,* at 221–22 (speech in public forums is subject to valid time, place, and manner restrictions).

Moreover, this ordinance does not involve the public forum. The Supreme Court has specifically held that public

---

[3]Because Eze has neither raised nor argued the applicability of the parallel state constitutional provision, Const. art. 1, § 5, we do not address it.

transit is not a public forum. *Lehman v. Shaker Heights,* 418 U.S. 298, 304, 41 L. Ed. 2d 770, 94 S. Ct. 2714 (1974). When a nonpublic forum is at issue, restrictions are constitutional "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 806, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985). The prohibitions contained in SMC 12A.12-.040(F) are both reasonable and viewpoint–neutral.

Eze also argues that *State v. Reyes,* 104 Wn.2d 35, 700 P.2d 1155 (1985), supports his position. In *Reyes,* we stated that "[a] criminal statute which affects speech must be narrowly construed by the courts in order to ensure that it prohibits only speech which is not constitutionally protected." *Reyes,* at 40 (citing *Gooding v. Wilson,* 405 U.S. 518, 522, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972)). Eze contends that this standard requires us to hold the ordinance unconstitutional unless we can narrowly construe SMC 12A.12.040(F) so that it prohibits only speech that has no First Amendment protection, such as fighting words, defamation or obscenity. Eze's argument, however, would preclude the government from regulating in any manner speech that is protected under the First Amendment. This, of course, is not the law. The government may impose valid time, place and manner restrictions on speech that is protected by the First Amendment, *Bering,* at 221–22, and as we have just shown, protected speech may be regulated under certain conditions if a public forum is not involved. A court need narrowly construe a law in the manner described in *Reyes* only if no other justification for the regulation of speech can be satisfied. Because the ordinance in this case can be upheld under the rules appropriate to nonpublic forums, the ordinance needs no additional construction narrowing its application.

For these reasons, we conclude that SMC 12A.12.040(F) is not overbroad.

## IV
### CONFLICT WITH STATE LAW

Finally, our state constitution prohibits cities from enacting laws that conflict with state law. Const. art. 11, § 11; *Republic v. Brown*, 97 Wn.2d 915, 919, 652 P.2d 955 (1982); *Bellingham v. Schampera*, 57 Wn.2d 106, 109, 356 P.2d 292, 92 A.L.R.2d 192 (1960). A state statute prohibits essentially the same conduct that SMC 12A.12.040(F) does, except the statute criminalizes only conduct that "*[i]ntentionally* disturbs others by engaging in loud or unruly behavior". (Italics ours.) RCW 9.91.025(1)(f). Because the Seattle ordinance prohibits a wider range of activity than does the state statute, Eze argues that the ordinance unconstitutionally conflicts with the state law.

Washington case law, however, establishes that a local ordinance does not conflict with a state statute in the constitutional sense merely because one prohibits a wider scope of activity than the other. *Republic v. Brown*, at 919; *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979); *Schampera*, at 111; *State v. Rabon*, 45 Wn. App. 832, 836–38, 727 P.2d 995 (1986). These principles have been succinctly stated as follows:

> ""The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition—but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required. * * * Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail.

(Citations omitted.) *Schampera*, at 111, *quoted in Republic v. Brown*, at 919, *and in State v. Rabon*, at 836.

These statements apply with equal force to Eze's arguments here. Neither the ordinance nor the statute expressly license, authorize or require any conduct at all; they merely

34

differ in terms of the scope of their prohibitions. Therefore, SMC 12A.12.040(F) does not unconstitutionally conflict with state law.

## V
## SUMMARY

The decision of the Court of Appeals upholding the constitutionality of SMC 12A.12.040(F) is affirmed.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

UTTER, J. (concurring)—I concur in the holding of the majority except insofar as it departs from my views expressed in my dissent in *State v. Aver,* 109 Wn.2d 303, 312–20, 745 P.2d 479 (1987).