IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32859-7-III |
| Respondent, | ) ) ) | |
| v. | ) | |
| NARIAH CORDOVA, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | |

BROWN, J. — Nariah Cordova appeals her convictions for disorderly conduct and obstructing a law enforcement officer. In an as-applied challenge, Ms. Cordova contends the disorderly conduct ordinance found in Pasco Municipal Code (PMC) 9.06.010 is unconstitutional because it infringes on her First Amendment rights. Ms. Cordova next contends her unlawful seizure cannot support an arrest for obstructing a law enforcement officer. We disagree with Ms. Cordova's contentions and affirm.

FACTS

Officer Dean Perry of the Pasco Police Department responded to a call regarding the location of Ms. Cordova, a reported teenaged runaway, at an area McDonald's. Officer Perry and Ms. Cordova differ in their accounts of what subsequently transpired.

According to Officer Perry, as he was responding to the call, he learned Ms. Cordova's mother was at the McDonald's with Ms. Cordova. When he arrived at the

McDonald's, he noticed quite a few people in the dining area. He approached Ms. Cordova and her mother, who were seated at a table, and saw Ms. Cordova loudly arguing with her mother. After identifying himself as a police officer, Officer Perry further noted Ms. Cordova's "behavior was belligerent and aggressive towards her mother" and him. Report of Proceedings (RP) at 42. Ms. Cordova used foul language. Officer Perry testified it was clear Ms. Cordova "was going to have her own way in this situation or there was gonna be no way." RP at 42. As Ms. Cordova continued to yell louder, people began to stop and watch, and her mother asked that the trio go outside as Ms. Cordova's behavior "was clearly stopping business." RP at 43.

Ms. Cordova refused to go outside. Officer Perry, intending to escort her out, grabbed her arm and elbow, putting her in a low-force escort hold. Ms. Cordova, still not complying with his directives, decided to either fight or flee. Because he was aware of the amount of traffic on the road near the McDonald's and the dangers of chasing a runaway through that traffic, Officer Perry escalated the force used and rolled into an arm bar technique. Ms. Cordova continued to struggle, which resulted in Officer Perry pinning her against a counter so he could handcuff her; Ms. Cordova sustained a scrape above her eye. Despite wanting to arrest her for disorderly conduct, Officer Perry released Ms. Cordova to her mother.

According to Ms. Cordova and her mother, they were sitting quietly in McDonald's, with Ms. Cordova talking in her normal voice, when Officer Perry approached them. He loudly asked questions, which Ms. Cordova answered. When

2

Ms. Cordova's mother suggested they go outside, Ms. Cordova stood up to leave. After rebuffing her mother's attempt to grab her hand, Officer Perry grabbed Ms. Cordova, threw her into the counter, and said she was under arrest. Then, in response to Ms. Cordova's comment Officer Perry "like[s] it rough," Officer Perry grabbed her head and slammed it into the counter. RP at 122.

The juvenile court found Ms. Cordova guilty of disorderly conduct in violation of PMC 9.06.010(1)(C) and obstructing a law enforcement officer. Ms. Cordova appealed.

ANALYSIS

A. Constitutionality of PMC 9.06.010(1)(C)

The issue is whether PMC 9.06.010(1)(C) is unconstitutional as applied to Ms. Cordova. PMC 9.06.010(1)(C) reads: "A person is guilty of disorderly conduct if that person does, with intent to cause or recklessly create a risk of public inconvenience, annoyance or alarm: . . . Engages in fighting or in violent, tumultuous, or threatening behavior." Ms. Cordova contends her speech alone cannot constitutionally serve as the basis for her conviction as (1) her speech was constitutionally protected under the First Amendment,[1] (2) disorderly conduct ordinances have been limited to the use of fighting words,[2] and (3) her speech did not amount to fighting words.

---

[1] Ms. Cordova solely argues her conviction is unconstitutional under the First Amendment to the United States Constitution. Thus, the applicability of the parallel state constitutional provision is not addressed.

[2] "Fighting words are words whose very utterance inflict injury or tend to incite an immediate breach of the peace." *State v. Montgomery*, 31 Wn. App. 745, 754, 644 P.2d 747 (1982) (citing *Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972)).

The Washington Supreme Court addressed a challenge to the constitutionality of a similar Seattle ordinance prohibiting disorderly conduct on a bus, which included "loud or raucous behavior" that "unreasonably disturbs others." *City of Seattle v. Eze*, 111 Wn.2d 22, 24, 759 P.2d 366 (1988) (quoting Seattle Municipal Code 12A.12.040(F)). While the challenge in *Eze* related to the ordinance's overbreadth, the court's analysis is instructive. The court first recognized the Seattle ordinance regulated behavior, not pure speech. *Id.* at 31. The *Eze* court then held the ordinance, to the extent it affected "speech," was not unconstitutional. *Id.* The court stated "restrictions on the *volume* of speech do not necessarily violate the First Amendment, even when that speech occurs in an area traditionally set aside for public debate–the so-called 'public forum.'" *Id.*

Here, Ms. Cordova fails to recognize the very terms of PMC 9.06.010(1)(C), like that of the ordinance at issue in *Eze*, regulates behavior, not pure speech. Unlike the cases she cites, Ms. Cordova was not charged with creating a disturbance by using abusive, lewd, vulgar, obscene, or crude language. *See Montgomery*, 31 Wn. App. 745; *City of Kennewick v. Keller*, 11 Wn. App. 777, 525 P.2d 267 (1974); *City of Pasco v. Dixson*, 81 Wn.2d 510, 503 P.2d 76 (1972). Neither Officer Perry nor the juvenile court focused on Ms. Cordova's speech in finding her guilty of disorderly conduct. Rather, they both focused on her conduct. The court's findings specifically state Ms. Cordova's "*conduct* within the restaurant was intentional, tumultuous, and created public inconvenience, annoyance, or alarm." Clerk's Papers at 100 (emphasis added). And while Officer Perry testified Ms. Cordova used foul language, he also testified she was

4

not disorderly because of her words; instead, he believed Ms. Cordova committed disorderly conduct by engaging in "tumultuous behavior likely to cause public alarm," namely her demeanor, her volume, and generally being disruptive. RP at 63. Thus, it was Ms. Cordova's conduct, not her speech, that was the basis for her conviction; her conviction for disorderly conduct under PMC 9.06.010(1)(C) was constitutional.

### B. Obstruction of a Law Enforcement Officer

The issue is whether Ms. Cordova's conviction for obstruction of a law enforcement officer was based on an unlawful seizure. Ms. Cordova contends Officer Perry did not have a lawful basis for her arrest as he was not engaged in an official police duty sufficient to support her conviction.

"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). To establish obstruction of a law enforcement officer, Washington case law requires specific conduct. *State v. E.J.J.*, 183 Wn.2d 497, 502, 354 P.3d 815 (2015).

Officer Perry was at the McDonald's responding to a report of a runaway. Under the Family Reconciliation Act, chapter 13.32A RCW, "a law enforcement officer is unquestionably fulfilling his . . . role as a community caretaker when he . . . encounters a child runaway or a child beyond the control of [her] parents." *State v. A.A.*, 187 Wn. App. 475, 488, 349 P.3d 909 (2015). Officer Perry's response to the report and his subsequent arrival at McDonald's was thus an official duty. *See State v. Turner*, 103

Wn. App. 515, 526, 13 P.3d 234 (2000) ("Officers are performing official duties . . . provided they were not acting in bad faith or engaging in a 'frolic' of their own."). While there, Officer Perry observed behavior indicating Ms. Cordova would not go back home with her mother. This behavior included acting belligerent, getting louder, and yelling at Officer Perry, which in turn caused McDonald's patrons to stop and take notice of what was occurring. This subsequent behavior constituted disorderly conduct.

At this point, Officer Perry asked Ms. Cordova to go outside. When she refused and attempted to resist, she obstructed a law enforcement officer.[3] *See id.* (sufficient evidence to support a conviction for obstructing a law enforcement officer as officer was performing official duties when officer had reasonable suspicion defendant committed the crime of public indecency by urinating in public and defendant refused to give his name, threatened the officer, and lunged at the officer).

Affirmed.

---

[3] In her brief, Ms. Cordova contends her seizure cannot be justified under the community caretaking exception to the warrant requirement and thus her seizure can only be justified on a suspicion of criminal activity, i.e., the disorderly conduct in violation of her First Amendment rights. She argues the community caretaking function allowed Officer Perry to approach her and ask her questions but did not authorize him to physically detain her. But Ms. Cordova did commit a crime in Officer Perry's presence while he was at the McDonald's performing an official duty. The seizure was lawful. No

No. 32859-7-III
*State v. Cordova*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Brown, J.

WE CONCUR:

_____     _____
Siddoway, C.J.                       Korsmo, J.

---

need exists to address whether his actions fell within the exception.